MONTANA NATIONAL BANK OF BILLINGS, APPELLANT, *v.* YELLOWSTONE COUNTY ET AL., RESPONDENTS.

(No. 6,038.)

(Submitted December 6, 1926. Decided December 30, 1926.)

[252 Pac. 876.]

*Taxation—National and State Banks—Discrimination Against National Banks—Bank Shares Assessable—Nonobservance of Law by Taxing Officers—Validity of Statutes.*

Taxation—National Banks—Shares of Stock—Discrimination in Favor of State Institutions Prohibited.
1. National banks are agencies of the United States created to promote its fiscal policies; as such their shares of stock cannot be taxed under state authority except as permitted by Act of Con-

---

1. See 26 R. C. L. 109.

[78 Mont. 62.]

gress (U. S. Rev. Stats., sec. 5219, as amended), to-wit, at no greater rate than is assessed upon other moneyed capital in the hands of the individual citizens of the state.

Same—What Constitutes Discrimination Against National Banks.
2.    Every clear discrimination in taxation by state authorities against national bank shares and in favor of a relatively material part of moneyed capital employed by state or private banks or by individuals engaged in operations and investments normally common to the business of banking, is a violation of the restriction placed by section 5219, United States Revised Statutes, upon their taxing power in that regard.

Same—Tax on National Bank Shares not Tax on Bank's Capital.
3.    A tax by the state on shares of a national bank is not a tax on its capital; the interest the holder has in them is a distinct and independent property which may be taxed notwithstanding the capital of the bank is invested in government securities.

Same—State not Required to Tax National Bank Shares Under System of Taxation Employed as to Other Property.
4.    The state is not required to apply the same system of taxation to the shares of stock in national banks it employs in the taxation of other property, provided there is no injustice, inequality or unfriendly discrimination against national bank stock.

Same—Bank Shares are "Property" for Purposes of Taxation.
5.    Shares of stock of a state bank or trust company fall within the definition of the term "property" as given in section 17, Article XII, of the state Constitution, and must be assessed to their owners at their full cash value, except to the extent that that value is represented in property which is assessed to the bank or company.

Same—Securities of United States Exempt from State Taxation.
6.    The securities of the United States held by a bank are not taxable by the state, directly or indirectly.

Same—To What Extent Bank Stock Taxable.
7.    To the extent that shares of stock of a bank have a value over and above the taxable real and personal property of the bank they are taxable, under the constitutional command (secs. 1 and 2, Art. XII) that all property, other than that specially exempted, must be taxed, without reference to the character of the securities which go to make up that value.

Same—Error or Misconduct of Taxing Officers in Administering Tax Laws not Sufficient for Holding Laws Invalid.
8.    A tax law cannot be held invalid for want of equality and uniformity because inequality or lack of uniformity results from the error or misconduct of taxing officers.

Same—Discrimination Against National Banks Resulting from Misapplication of Law—Validity of Statutes.
9.    Taxing officers assessed the shares of a national bank at their full cash value without deducting from such value government securities owned by the bank. In disregard of constitutional provisions relating to taxation and statutory provisions requiring like action in regard to shares in a state bank, upon the assumption that such securities held by it were exempt, they deducted their value from the moneyed capital of the latter

---

3.    See 26 R. C. L. 112.
4.    See 26 R. C. L. 115.

bank, the effect of which was nonassessment of its shares of stock. *Held*, upon a review of the statutes applicable, that they are not open to attack as offending against the provisions of section 5219, United States Revised Statutes, *supra* (see par. 1 above), but that the resultant discrimination against plaintiff national bank was due to faulty administration of the law, and that therefore, under rule 8 above, the statutes may not be held invalid.

---

[1]  Banks and Banking, 7 **C. J.**, sec. 574, p. 758, n. 67; sec. 585, p. 760, n. 1.  Constitutional Law, 12 **C. J.**, sec. 888, p. 1154, n. 51; secs. 1047–1059, p. 1255, n. 27.  Taxation, 37 **Cyc.**, p. 748, n. 84; p. 835, n. 86, 89, 90; p. 836, n. 4, 5.
[2]  Taxation, 37 **Cyc.**, p. 830, n. 60; p. 835, n. 94; p. 837, n. 7.
[3]  Taxation, 37 **Cyc.**, p. 818, n. 62; p. 831, n. 68; p. 832, n. 74; p. 838, n. 16.
[4]  Taxation, 37 **Cyc.**, p. 727, n. 52; p. 818, n. 62; p. 835, n. 89, 90; p. 837, n. 6.
[5]  Taxation, 37 **Cyc.**, p. 837, n. 7; p. 1033, n. 87, 88.
[6]  Taxation, 37 **Cyc.**, p. 879, n. 49.
[7]  Taxation, 37 **Cyc.**, p. 806, n. 72; p. 818, n. 62; p. 821, n. 92; p. 827, n. 35; p. 1033, n. 88.
[8]  Taxation, 37 **Cyc.**, p. 1034, n. 92.
[9]  Taxation, 37 **Cyc.**, p. 839, n. 17 New.

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

Action by the Montana National Bank of Billings against Yellowstone County and its treasurer. From an order sustaining a general demurrer to the complaint, and a judgment for defendants thereon, plaintiff appeals. Affirmed.

*Messrs. Grimstad, Brown & Davis,* for Appellant, submitted an original and a reply brief; *Mr. Horace S. Davis* argued the cause orally.

Does the taxation of shares in national banks at their full cash value, less the value of all real estate assessed directly to the corporations, impose a greater burden than is borne by state banks, where no tax is levied upon their shares directly? By the demurrer in this case it is conceded that the shares of stock in state banking institutions were not taxed at all during 1925, whether their value represented property not taxed to the banks or otherwise. In other words, any part of the value of these shares for that year, which was based upon Liberty loan

bonds of the United States, appearing among the corporate assets, was wholly untaxed by the state and its agencies. Nor was any machinery provided whereby such taxation might have been accomplished, as appears from an examination of Chapters 157 to 191, inclusive, of Part III of the Political Code, Revised Codes of Montana of 1921.

A brief review of the Acts of the legislature on the subject under consideration will be instructive. By the earliest state statutes, sections 5–10, inclusive, of "An Act concerning Revenue," Laws of 1891, page 73, the stockholders in every bank organized under the authority of the state of Montana, or of the United States, were assessed and taxed on the value of their stock. These sections were carried forward into the Codes of 1895 as sections 3690 to 3694, inclusive, of the Political Code, with an unimportant amendment appearing as of section 3695, Codes of 1895. In the Codes of 1907 these statutes appear as sections 2502–2507, without substantial change. Sections 2503 to 2505, inclusive, Revised Codes of 1907, were repealed by Chapter 31 of the Laws of 1915, and three new sections covering the same subject enacted in lieu thereof. Reference to this legislation of 1915, however, will demonstrate that the theory of taxation, as applied to state banks was still the same, namely, the imposition of a tax directly upon the shares of stock in the same manner that the state asserted the right to tax the holders of shares in national banks. Section 1 of Chapter 31, *supra,* provided, as did the earlier law, that all shares of stock in state and national banks and banking corporations, whether of issue or not, existing by authority, of the United States or of this state, and located within this state, and doing business within the state, should be assessed to the owners thereof in the cities, towns, *etc.* It was this legislation which was declared unconstitutional by the supreme court in *Dennis* v. *First Nat. Bank,* 55 Mont. 448, 178 Pac. 580, and in *Union Bank, etc.,* v. *Moore,* 62 Mont. 132, 204 Pac. 361, and for which the scheme of taxation now recognized by Chapter 81, Laws of 1921 (secs. 2064–2067, Rev. Codes 1921), and by the

opinion of our supreme court in *East Helena State Bank* **v.** *Rogers,* 73 Mont. 210, 236 Pac. 1090, was substituted.

Section 5219, United States Revised Statutes, does not require the states to conform their tax laws to the system of taxing national banks upon the shares of their stock in the hands of their owners, but this section does require that in adopting a different system of taxing banks organized under the state law, no discrimination shall be effected against the stockholders in national banks. (*Davenport Nat. Bank* v. *Board of Equalization,* 123 U. S. 83, 31 L. Ed. 94, 8 Sup. Ct. Rep. 73; *San Francisco Nat. Bank* v. *Dodge,* 197 U. S. 70, 49 L. Ed. 669, 25 Sup. Ct. Rep. 384.) Where the tax is levied directly upon the property of the bank, that is, in Montana, upon its real estate, furniture and fixtures, and moneyed capital, bonds of the United States which enter into and form a part of its assets are exempt from taxation, in other words, are not taxable by the authority of the state. This proposition has been announced as law by the supreme court of Montana, in *East Helena State Bank* v. *Rogers, supra,* and is supported by the authorities uniformly. (*McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. Ed. 579; *Bank of Commerce* v. *New York City,* 67 U. S. 620, 17 L. Ed. 451; *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 51 L. Ed. 901, 27 Sup. Ct. Rep. 571; *Farmers' etc. Bank* v. *Minnesota,* 232 U. S. 516, 58 L. Ed. 706, 34 Sup. Ct. Rep. 354.)

On the other hand, where a tax is laid directly upon the shares of stock, and is assessed against the individual shareholders, as is the case under the Montana statute (sec. 2064, Rev. Codes 1921), providing for the taxation of the shares of national banking corporations, a different situation is presented, and an entirely different rule applies. In such cases it is considered that government obligations owned by the bank itself are assets of the bank as distinguished from the shares of stock which are the individual property of the shareholders. It may be conceded that where a large part of the assets of a national bank are invested in government securities the value

of such an investment enters into, and is reflected as part of, the value of the several shares of stock owned by the stockholders. Yet while this value is a part of the value of these shares, a tax upon the shares is not a tax upon the government bonds; it is a tax upon other property distinct therefrom. In such a case, nothing else appearing, a state may lawfully tax the shares of stock at their full cash value, less the value of other real estate which may be owned by, or assessed directly to, the corporation itself, and that too without making deductions for the value of the government securities, which may enter into the value of the shares as fixed for taxation purposes.

This distinction and rule of law were first announced by the supreme court of the United States in *Van Allen* v. *Assessors,* 3 Wall. (U. S.) 573, 18 L. Ed. 229. They are recognized by this court in *East Helena State Bank* v. *Rogers, supra.* (See, also, *First National Bank, etc.,* v. *Board of Equalization,* 92 Ark. 335, 122 S. W. 988.)

It therefore follows that a tax upon the shares of national banks, the value of which is ascertained, under section 1999, Revised Codes of 1921, by deducting the value of all real estate otherwise assessed to the banks directly, does not entitle the shareholders to a further deduction on account of United States bonds, included among the assets of such bank, and entering into the value of such shares, unless such deduction be otherwise expressly allowed by statute, and is not a tax by the state upon obligations of the federal government within the prohibition of section 3701, U. S. Rev. Stats.; 8 Fed. Stats. Ann., 2d ed., 407.

To this extent the scheme of taxation devised and in force in the state of Montana, in relation to national banks is valid. But if by this system of taxation the state assesses shares in such banks without providing for or allowing a deduction on account of government bonds owned by them, and if further by the adoption of a different method of taxing state banks, such deductions are directly or indirectly allowed the shareholders therein, so that the value of their shares, which is

based upon nontaxable government securities, owned by the banks themselves, escapes taxation altogether, then a discrimination within the prohibition of section 5219, *supra,* at once appears. (*Mercantile Nat. Bank* v. *City of New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826; *Van Allen* v. *Assessors, supra; Des Moines etc. Bank* v. *Fairweather,* 263 U. S. 103, 68 L. Ed. 191, 44 Sup. Ct. Rep. 23; *Marion Nat. Bank* v. *Burton,* 121 Ky. 876, 10 L. R. A. (n. s.) 947, 90 S. W. 944; *McHenry* v. *Downer,* 116 Cal. 20, 45 L. R. A. 737, 47 Pac. 779; *Cleveland Trust Co.* v. *Lander,* 62 Ohio, 266, 56 N. E. 1036; *San Francisco Nat. Bank* v. *Dodge,* 197 U. S. 70, 49 L. Ed. 669, 25 Sup. Ct. Rep. 384.)

The method of taxation applied to national banks in this state reaches every element of value reflected in their stocks by first taking real estate to the corporation itself, and the balance of the full cash value of the shares, including the value of government securities, owned by the corporation, to the shareholders themselves. The method of taxation applied to state banks, on the other hand, permits the value of their shares, so far as this value represents government obligations, owned by the corporations, to escape any taxation whatsoever. The discrimination against national banks and shareholders in such institutions is apparent.

The conclusions, therefore, which must be drawn from the foregoing authorities, as applied to the facts, which appear from the record before the court, is that although a state need not tax its own banks, or their shares of stock, by the same plan as that prescribed by Congress in granting permission to the states to tax shares in national banks, nevertheless some tax must be imposed upon the moneyed capital of its own corporations, which is at least the equivalent of the tax laid upon shareholders in national banks, if the discrimination prohibited by section 5219, *supra,* is to be avoided. Any substantial variation from this standard, affecting the state at large, or any considerable quantity of moneyed capital invested in competition with the business of national banks, will

render the tax levied by state authorities upon national bank shareholders illegal and void. Such a variation, resulting in a most grievous discrimination against the owners of stock in the appellant bank, appears here. We respectfully submit that by reason of this discrimination, the taxes demanded pursuant thereto are nullities.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Respondents, submitted a brief; *Mr. Angstman* argued the cause orally.

The statutes relating to the taxation of shares of stock in national banks and the assessment in question are not discriminatory within the meaning of section 5219, Revised Statutes of the United States, or of the United States or state Constitution.

Before the assessment, or the statutes under which it was made, will be held to be void it must appear that they promote or foster an unfriendly discrimination against national banks and in favor of state banks. (*First Nat. Bank* v. *County of Dawson,* 66 Mont. 321, 213 Pac. 1097; *Commercial Nat. Bank* v. *Custer County,* 76 Mont. 45, 245 Pac. 259; *Des Moines Nat. Bank* v. *Fairweather,* 263 U. S. 103, 68 L. Ed. 191, 44 Sup. Ct. Rep. 23.) The restriction under the federal statute (sec. 5219 as amended by Act of March 4, 1923, 42 Stats. at Large, 1499), is, that the tax imposed by the state upon the shares of stock of a national bank "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks."

Under section 1999, Revised Codes of 1921, shares of stock in a national bank are placed in the same class as moneyed capital of a state bank, and by section 2000 each is taxed upon the same percentage of its true and full value. The moneyed capital of a state bank is ascertained by deducting, from the moneys and credits of the bank, the amount of its deposits and of any indebtedness representing money bor-

rowed for use in the business. (Secs. 1999 and 2067, Rev. Codes 1921.) The value of the shares of stock of a national bank is ascertained from the statement of the cashier showing the face value of the capital stock, and the amount of surplus and undivided profits, and by deducting the value of all real estate. (Secs. 2066 and 1999, Rev. Codes 1921.) The statutes of the state, therefore, do not discriminate against national banks and in favor of state banks. The discrimination complained of is produced not because of any state statute, but arises because of the federal statute exempting the securities in question from taxation by the states. (Sec. 3701, U. S. Rev. Stats.; U. S. Comp. Stats., sec. 6815.) Hence, in the taxation of state banks the taxing officers do not deduct from the moneyed capital investments in tax exempt securities because of the state statutes on the subject, but solely because of the federal statutes. (*East Helena State Bank* v. *Rogers,* 73 Mont. 210.)

The state statutes do not produce any discrimination. The state in deducting investments in tax exempt securities from the moneyed capital of a state bank for the purpose of taxation simply yields to the exemption created by the federal statutes. The supreme court of the United States has decided the precise question involved in this case against the contention of appellant in the case of *Des Moines Nat. Bank* v. *Fairweather,* 68 L. Ed. 191.

The rule there announced was followed in the cases of: *Davenport Nat. Bank* v. *Board of Equalization* (Iowa), 19 N. W. 889; *Jenkins* v. *Neff,* 62 N. Y. Supp. 321; *State* v. *First Nat. Bank of St. Paul* (Minn.), 204 N. W. 874.

There can no longer be any doubt as to the right of a state to tax the interest of a stockholder in a national bank without any deduction for investments of the bank in tax exempt securities. (*Van Allen* v. *Assessors,* 3 Wall. 573, 18 L. Ed. 229; *People* v. *Commrs. of Taxes,* 4 Wall. 244, 18 L. Ed. 344; *Des Moines Nat. Bank* v. *Fairweather,* 263 U. S. 103, 68 L. Ed. 191, 44 Sup. Ct. Rep. 23; *First Nat. Bank of Shreveport* v.

*Board,* 3 South. 408.) A state statute will not be condemned as discriminatory when it goes as far as the state has authority to go in taxing state banks in the same manner. (*Lionberger v. Rouse,* 9 Wall. (U. S.) 468, 19 L. Ed. 721.)

The taxing statutes are in no manner discriminatory against national banks. In this state the test to be applied in determining whether a statute is discriminatcry is "not what has been done under it, but what may be done under it." (*State* v. *Sunburst Ref. Co.,* 73 Mont. 68, 83, 235 Pac. 428.)

Sections 1 and 16 of Article XII of our Constitution contemplate that "all property" shall be taxed. This is also the command of section 1997, Revised Codes of 1921. As said by this court in the case of *East Helena State Bank* v. *Rogers,* 73 Mont. 210: "Our Constitution contemplates and our Codes declare that all property in this state not exempt shall be subject to taxation and that all taxable property shall be assessed at its full cash value."

Section 17 of Article XII of the Constitution provides that property, as the term is used in Article XII of the Constitution, embraces "stocks," but makes this proviso: "But this shall not be construed so as to authorize the taxation of the stocks of any company or corporation when the property of such company or corporation represented by such stocks is within the state and has been taxed." Subsection "First" of section 1996, Revised Codes of 1921, is a reiteration of section 17, Article XII, of the Constitution.

Under the classification statute (sec. 1999) shares of stock in a state bank or other corporation undoubtedly come under "Class Seven," and are taxable upon the same percentage of their full value as shares of stock in a national bank or moneyed capital in a state bank. This result seems to follow: That, to the extent that shares of stock in a state bank represent an interest in property that has not been taxed, the same are clearly taxable under our Constitution and statutes.

As was said by the court in *Daly Bank etc. Co.* v. *Board of Commrs.,* 33 Mont. 101, 81 Pac. 950, after referring to de-

ductions that were allowed from solvent credits: "When this is done all of its remaining property is subject to taxation, the same as the property of a natural person; and, finally, the stock is taxable to the owners at its full cash value, less the amount of taxable property of the bank or trust company representing such stock." It follows that shares of stock in state banks, in so far as they represent an interest in tax exempt securities, are to that extent taxable under the Constitution and statutes of this state, and taxable also upon the same percentage of the full valuation as shares of stock in a national bank (each taking forty per cent under classes 7 and 6, respectively). Hence, were the laws obeyed by the taxing officials, there would not be the slightest discrimination against national banks. And, if it can be said that "it is no argument in favor of the law that the officers did not enforce it" (*State* v. *Sunburst Ref. Co.,* 73 Mont. 68, 83, 235 Pac. 438), then, certainly, it is no argument against the validity of a law that the officers did not enforce it.

The fact that some shareholders in state banks may escape taxation does not make the tax discriminatory under section 5219, United States Revised Statutes. (*Merchants etc. Nat. Bank* v. *Pennsylvania,* 42 L. Ed. 236.) If the assessment was not in conformity with the Constitution and statutes, it would seem that the appellant, if it were aggrieved thereby, should have taken proceedings to compel the enforcement of the law.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff brought this action in behalf of its stockholders against Yellowstone county and its treasurer to recover certain taxes, paid under protest, which were levied against the stockholders on account of their ownership of the capital stock of plaintiff, a national bank, during the year 1925. The plaintiff is capitalized at $100,000, divided into 1,000 shares of the par value of $100 each. Upon the first Monday of March, 1925, plaintiff's surplus fund in addition

to its capital stock was $50,000, and it had undivided profits to the amount of $2,659.13.

The plaintiff carries on a general banking business at Billings. Among its competitors in that city is the Security Trust & Savings Bank, a Montana corporation, which does a similar business. At various points throughout the state of Montana there are approximately 150 state banking corporations operating in competition with the plaintiff.

The net moneyed capital of the plaintiff which it employs in its banking business was on the day next preceding the first Monday of March, 1925, of the value of $129,463.49, including bonds and securities of the United States of the value of $101,671.25. In addition, it owned furniture and fixtures of the value of $23,195.64 but no real estate.

At the same time the net moneyed capital of the Security Trust & Savings Bank employed in its business was of the value of $51,894.47, not including Liberty bonds and other securities of the United States of the value of $169,750 which it owned. It also owned furniture and fixtures of the value of $12,246.44 and real estate of the value of $62,375. Where the word "value" is used "full cash value" is meant.

On March 2, 1925, plaintiff, pursuant to section 2066, Revised Codes of 1921, delivered to the assessor of Yellowstone county the required verified statement, disclosing the value of its capital stock to be in the aggregate $152,659.13 and of each share $152.66; thereupon, pursuant to the Classification Act (subd. 6 of section 1999, Rev. Codes 1921) and the provisions of Chapter 162, Part III of the Political Code, Revised Codes of 1921 (secs. 2063 to 2067, inclusive), the shares of the plaintiff were assessed to its stockholders for the year 1925 at the value of $152,659.13 in the aggregate and of $152.66 each, and without deduction in any manner from such value on account of the government securities owned by the plaintiff; in other words, the securities to the extent of $101,781.25 were included among the assets of the bank. The deduction of this item would have reduced the aggregate value of the capital

stock of the bank to $50,877.88, or to a value of each share of
$50.88. For the year 1925 the shares of the capital stock of
the banking corporations organized under the laws of Montana,
including the Security Trust & Savings Bank, were not taxed
at all but a tax was levied against the taxable property of these
banks in accordance with the Classification Act. As illustra-
tive, the moneyed capital of the Security bank was ascertained
by deducting from the moneys and credits of the bank the
amount of the deposits and any indebtedness representing
money borrowed for its use. The government securities being
exempt from taxation were not reckoned as a part of the
moneyed capital, but, on the contrary, served to eliminate the
moneyed capital ascertained as explained above: the bank
wiped out the $51,894.47 by deducting therefrom a sufficient
amount of the government securities (*East Helena State Bank*
v. *Rogers,* 73 Mont. 210, 236 Pac. 1090), leaving no moneyed
capital subject to assessment. Thus the Security bank was
assessed only upon its real estate and furniture and fixtures.

Plaintiff alleges that upon the day next preceding the first
Monday of March, 1925, the net moneyed capital of the 150
state banking corporations doing business in competition with
the plaintiff was of the value of approximately $5,500,000,
including government bonds and securities of the value of
approximately $3,000,000. These banks were then the owners
of furniture and fixtures of the value of approximately $2,-
100,000, and of real estate of the approximate value of
$2,000,000. The value of the moneyed capital of all these
banks for the purposes of taxation was arrived at in the same
manner employed by the Security Trust & Savings Bank; all
deducted from their moneys and securities the amount of their
deposits and any indebtedness representing money borrowed
for use in their business, and in addition thereto the value of
their government bonds and securities.

Upon the first Monday of March, 1925, the shares of stock of
the Security bank were of the aggregate cash value of $126,-
515.91, each share being of the value of $126.52. The plaintiff

alleges that assessing the real estate, furniture and fixtures at $74,621.44 only was equivalent to a direct assessment of the shares of stock in that amount, which was $51,894.47 less than the true value thereof, and was the equivalent of an assessment of these shares directly to the shareholders at an aggregate value of $12,246.44 and of the real estate directly to the bank at $62,475, and that such was the practice throughout Montana with respect to state banks. By reason of the difference between the method employed in fixing the value of the shares of the plaintiff for assessment purposes and the method followed in taxing state banks, the plaintiff alleges that the tax for the year 1925 upon its capital stock was at a greater rate than is assessed upon other moneyed capital in the hands of the state banks and of their shareholders, who are direct competitiors of the plaintiff, and further was not uniform upon the same class of property within the state or within Yellowstone county. The plaintiff therefore alleges that subdivision 6 of section 1999, *supra,* and Chapter 162, *supra,* and the assessments imposed thereunder, are illegal and void (a) because they conflict with section 5219 of the Revised Statutes of the United States as amended, in that any tax levied and imposed by virtue of such assessment, or pursuant to such statutes and laws, upon the shares of the capital stock of the plaintiff, is at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state of Montana, coming into competition with the business of national banks; (b) because they conflict with the provisions of section 11 of Article XII of the Constitution of Montana, in that any tax imposed by virtue of the assessment, or in pursuance of such statutes, upon the shares of plaintiff is not uniform upon the same class of subjects within the territorial limits of the authority levying the tax; and (c) because they conflict with the Fourteenth Amendment to the Constitution of the United States by serving to deprive the plaintiff and its shareholders of their property without due process of law, and deprive them of the equal protection of the law.

The defendants interposed a general demurrer to the complaint which was sustained, thereupon plaintiff suffered judgment to go against it and after entry thereof appealed to this court.

"National banks are not merely private moneyed institutions **[1, 2]** but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property and their shares cannot be taxed under state authority except as Congress consents and then only in conformity with the restrictions attached to its consent." (*First Nat. Bank of Guthrie Center* v. *Anderson*, 269 U. S. 341, 70 L. Ed. 171, 46 Sup. Ct. Rep. 135.)

Section 5219 of the Revised Statutes of the United States, as amended by the Act of March 4, 1923 (Chap. 267, 42 Stats. at Large, 339), is applicable to the present controversy. (This section was again amended by Act approved March 25, 1926, but the last amendment does not affect this case.)

By this statute Congress has permitted the taxation of shares in national banks to their owners under the laws of the state where the bank is located, subject to the restriction that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of the individual citizens of such state." And has further assented to the taxation of the real property of the bank for state, county and municipal purposes "to the same extent, according to its value, as other real property is taxed."

"The purpose of the restriction is to render it impossible for any state, in taxing the shares, to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in state banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking. * * * Every clear discrimination against national bank shares and in favor of a relatively material part of other moneyed capital employed in substantial competition with national banks is a violation of both the letter and spirit of the restriction."

(*First Nat. Bank of Guthrie Center* v. *Anderson, supra; Des Moines Nat. Bank* v. *Fairweather*, 263 U. S. 103, 68 L. Ed. 191, 44 Sup. Ct. Rep. 23, and cases cited.)   In harmony are the following decisions of this court: *Daly Bank & Trust Co.* v. *Board of County Commrs.*, 33 Mont. 101, 81 Pac. 950; *Dennis* v. *First Nat. Bank*, 55 Mont. 448, 178 Pac. 580; *First Nat. Bank of Glendive* v. *County of Dawson*, 66 Mont. 321, 213 Pac. 1097; *Commercial Nat. Bank* v. *Custer County*, 76 Mont. 45, 245 Pac. 259.

The tax permitted by Congress is not, except as to the real [3] property, a tax upon the property of the bank.   A tax on shares of a national bank is not a tax on its capital.   The corporation is the legal owner of all the property of the bank.   The interest of the shareholder is a distinct and independent property, held by him like any other property that may belong to him.   (*First Nat. Bank of Billings* v. *Province*, 20 Mont. 374, 51 Pac. 821, following *Van Allen* v. *Assessors*, 3 Wall. 573, 18 L. Ed. 229; *Hawley* v. *City of Malden*, 232 U. S. 1, Ann. Cas. 1916C, 842, 58 L. Ed. 477, 34 Sup. Ct. Rep. 201.)

A state may tax shares of national banks in the hands of stockholders notwithstanding the capital of the bank is invested in government securities.   (*Van Allen* v. *Assessors, supra; Des Moines Nat. Bank* v. *Fairweather, supra,* and cases cited.)

"A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden." (*Mercantile Bank* v. *New York*, 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826; *Commercial Nat. Bank* v. *Custer County, supra.*)

The state is not obliged to apply the same system of taxation [4] to the shares of stock in national banks that it uses in the taxation of other property, provided there is no injustice,

inequality or unfriendly discrimination against the national bank stock. (*First Nat. Bank of Glendive* v. *County of Dawson, supra; Amoskeag Savings Bank* v. *Purdy,* 231 U. S. 373, 58 L. Ed. 274, 34 Sup. Ct. Rep. 114.)

Taxes, said the eminent Judge Cooley, are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs. "The citizen pays from his profits the portion demanded, in order that, by means thereof, he may be secured in the enjoyment of the benefits of organized society." Through organized society the citizen is enabled to enjoy the blessings of liberty and the legitimate pursuit of happiness. He owes to the state a duty to pay his just proportion toward the support of the government, and the state in turn "is supposed to make adequate and full compensation, in the protection which it gives to his life, liberty and property, and in the increase to the value of his possessions, by the use to which the money contributed is applied." (Cooley on Taxation, 3d ed., p. 3.)

Our Constitution commands the taxation of all property, except that specially exempted. (Secs. 1, 2, Art. XII.) It is specially provided that "the power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them and not by this Constitution exempted from taxation." (Sec. 7, Art. XII.) The evident meaning of this provision is that the property of the corporation shall bear its equal share of the burdens of taxation; and the provision of section 1 of Article XII that the legislature "shall prescribe such regulations as shall secure a just valuation for taxation of all property," applies to artificial as well as to natural persons. (*Northwestern Mutual Life Ins. Co.* v. *Lewis and Clarke County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982.)

"The word property, as used in this Article, is hereby declared to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership, but this shall not be construed so as to authorize the taxation of the stocks of any company or corporation when the property of such company or corporation represented by such stocks is within the state and has been taxed." (Sec. 17, Art. XII.)

In *Daly Bank & Trust Co.* v. *Board of Commrs.,* 33 Mont. 101, 81 Pac. 950, this court commented upon the clarity of the section last quoted and continued: "To the extent that the capital stock is represented by property belonging to the state bank or trust company and which property is liable to taxation, to that extent the stock of that bank or trust company is not taxable. The real and personal property of a state bank or trust company is to be assessed as are the same kinds of prop-[5] erty belonging to natural persons." (See, also, *Bank & Trust Co.* v. *Moore,* 62 Mont. 132, 204 Pac. 361.) Stocks of a state bank or trust company fall within the definition of the term "property," as given in section 17, *supra,* and "are to be assessed to the owners at their full cash value, except to the extent that that value is represented in property which is assessed to the bank or trust company itself."

The foregoing construction of the constitutional provisions under consideration we now reaffirm.

Unquestionably it was the plain duty of the legislature to provide for the assessment and taxation of all the property of corporations situated within this state liable to taxation, and also the shares in the corporation in so far as the shares represent value which has not been taxed, and if the legislature has not done so, moneyed capital in the form of shares in state banking corporations is favored to the prejudice of moneyed capital invested in national bank stocks. (*Van Allen* v. *Assessors, supra; Mercantile Nat. Bank* v. *New York, supra; McHenry* v. *Downer,* 116 Cal. 20, 45 L. R. A. 737, 47 Pac.

779; *Marion Nat. Bank* v. *Burton,* 121 Ky. 876, 10 L. R. A. (n. s.) 947, 90 S. W. 944.)

It is true that the securities of the United States owned by [6]   the bank may not be taxed, directly or indirectly.   The state, powerless to do so without permission of the paramount power, may not tax the securities issued by the national government.   (*East Helena State Bank* v. *Rogers, supra.*)

It stands admitted upon the record that the shares of stock in the Security Trust & Savings Bank have a value over and [7]   above the taxable real and personal property of the corporation to the extent of $51,894.47.   It matters not that Liberty bonds and other government securities go to make up that value.   These are the property of the bank, not of the stockholders.   The shares have a distinct value of their own. (*Des Moines Nat. Bank* v. *Fairweather, supra.*)   To the extent that this value exceeds the value of the taxable real and personal property of the corporation the stock is taxable.   The taxability of these shares is indubitable in the light of section 17 of Article XII of the Constitution.   That this section, as we said in *State ex rel. Rankin* v. *Harrington,* 68 Mont. 1, 217 Pac. 681, "gives affirmative recognition to the policy that shares of stock may have an independent status for the purpose of taxation is too clear to admit of discussion; and that such shares, if within this state, whether belonging to residents or nonresidents are proper subjects of taxation is beyond question."

But it is urged that in the light of our legislative history respecting the taxation of bank stock it must be held that the legislature in effect has relieved the stocks of state banking corporations from taxation.   If the legislature has done so it has proceeded in the very teeth of the Constitution.   The argument has  the following insecure basis: The second legislative assembly passed an Act concerning revenue and this was the first enactment upon the subject following the adoption of the Constitution.   (Laws 1891, pp. 73 *et seq.*)   Section 6 of the Act provides in part that the stockholders in every bank

or banking association organized under the authority of this
state or the United States must be. assessed and taxed on the
value of their shares of stock therein, in the county, town, city
or district where such bank or banking association is located
and not elsewhere, whether such stockholders reside in such
place or not.   The remainder of the section and sections 7 and
8 contain procedural directions with respect to the assessment.
Section 7 provides that in the assessment of the shares of
stock mentioned in the next preceding section each stockholder
must be allowed all the deductions and exemptions allowed by
law in assessing. the value of other taxable property owned by
individual citizens in this state, and the assessment and taxa-
tion must not be at a greater rate than is made or assessed
upon other moneyed capital in the hands of individual citizens
of this state.   Without change these sections were re-enacted
as sections 3691, 3692 and 3693 of the Political Code of 1895,
and went into the Revised Codes of 1907 as sections 2503,
2504 and 2505.

There appeared in the Civil Code of 1895 section 585, which
provided that ''banks incorporated under the provisions of
this title shall be taxed as national banks are, the stock to pay
its share of the revenue, whether held in the state or not.''
Section 611, being a part of the Chapter relating to trust,
deposit and security and savings bank corporations, reads as
follows: ''The property of the corporations organized under
this Act shall be assessed for taxes in the same manner as the
property of national banks and no other.''   These sections were
carried into the Revised Codes of 1907 as sections 3922 and
3944.   In the meantime, by decision promulgated July 29, 1905,
this court in *Daly Bank & Trust Co.* v. *Board of County
Commrs., supra,* had declared section 611 of the Civil Code
unconstitutional by reason of the fact that it attempted in
effect to exempt the personal property of a state bank or trust
company from taxation,—the personal property of a national
bank being thus exempt.   Nothing appears to have been done
to remedy the situation until 1915, when the Fourteenth Legis-

lative Assembly enacted Chapter 31 (Session Laws of 1915, p. 45). A review of this Act would not be .useful. It is enough to say that it sought to place the shares of stock in state and national banks and banking corporations upon an equality.

The Classification Act was passed in 1919 (Chap. 51, Session Laws of 1919, p. 112). Class six of section 1, now section 1999, Revised Codes of 1921, provides: ''For the purpose of taxation the taxable property in this state shall be classified as follows: Class six: The shares of stock of national banking associations and the moneyed capital employed in conducting a banking business by any other banking corporation, association or individual in this state. Such money capital to be ascertained by deducting from the moneys and credits of such banking corporation, association, or individual, the amount of the deposits and any indebtedness representing money borrowed for use in said business, and the value of the shares of any national banking association, to be ascertained by deducting the value of all real estate of such association.''

The Seventeenth Legislative Assembly, at its regular session, perceiving that Chapter 31 of the 1915 Session Laws was of doubtful validity, and desiring to conform to the provisions of the Classification Law, repealed Chapter 31 and enacted a law which is known as Chapter 81 (Session Laws of 1921, p. 72), relating to the assessment of stock in banking corporations, national and state. This Act contains provisions respecting the assessment and taxation of all shares of stock in national banks, as well as provisions for taxing the property of state banking corporations in accordance with the provisions of the Classification Law. No mention is made of shares of stock in state banks. It is by reason of this omission that the plaintiff argues that it was the design of the legislative assembly to exempt shares in state banks from taxation. With this argument we cannot agree. Since the adoption of our state Constitution the solicitous design of our legislative department has been to avoid such discrimination.

As we have seen, it was pointed out in the *Daly Bank Case* that the policy of taxing shares in state banks as shares in national banks are taxed, permitted the personal property of state banks to escape taxation, which was in direct contravention of our Constitution.  In order to clear up a misapprehension it is now necessary to take note of the fact that the force of that case was overlooked in *East Helena State Bank* v. *Rogers, supra*.  This oversight contributed to the manifest error into which the court fell in making use of the following expressions in the latter case: "This state had the option to tax the shares of stock in state banks to the individual shareholders or to tax the property of such banks to the banks themselves.  It could not tax both at the same time.  (Sec. 16, Art. XII, Constitution of Montana.)  If it had chosen the first alternative it might then have assessed the shares at their full cash value without reference to the character of the securities in which the bank's funds were invested."  The foregoing statements in the opinion in the *East Helena State Bank Case* are now expressly disapproved.

By the Constitution the state is commanded to tax the property of the banks—the corporations—and also the shares if they have a value independent of the taxable property of the bank.  It cannot tax the property to the banks and at the same time tax the shares to the extent that the property is taxed, but it can tax the property, and also the shares to the extent that they have a value above and beyond the property of the bank which has been taxed.  And it may tax the shares to that extent without reference to the character of the securities which go to make up the value which the shares have over and above the taxable property of the bank.  (*Van Allen* v. *Assessors, supra; People* v. *Commissioners of Taxes,* 4 Wall. 244, 18 L. Ed. 344; *Home State Bank* v. *Des Moines,* 205 U. S. 503, 51 L. Ed. 901, 27 Sup. Ct. Rep. 571; *Cleveland Trust Co.* v. *Lander,* 184 U. S. 114, 46 L. Ed. 458, 22 Sup. Ct. Rep. 395.)

The shares of the Security Bank & Trust Company were not taxed for the year 1925, but was the failure to tax because of

an unfriendly discrimination by Act of the legislative department or through a misconception of the law on part of the officers of the state and county who are charged with the execution of the laws?

Sections 1997 and 1998, Revised Codes of 1921, provide that all property in this state is subject to taxation, with certain exemptions, consistently with sections 1 and 2 of Article XII of the Constitution. Subdivision first of section 1996 provides that the term "property" includes moneys, credits, bonds, stocks, franchises and other matters and things real, personal, and mixed, capable of private ownership. "All taxable property must be assessed at its full cash value." (Sec. 2001, Rev. Codes 1921.) The assessor must assess the property subject to taxation to the persons by whom it was owned or claimed, or in whose possession or control it was at 12 o'clock noon of the first Monday of March next preceding. (Sec. 2002.) The assessor must require from each person a statement under oath setting forth specifically all the real and personal property owned by such person or in his possession or under his control at 12 o'clock noon of the first Monday of March. (Sec. 2003.) The assessor has power to subpoena and examine any person in relation to any statement furnished to him or which discloses property which is assessable in his county, and he may exercise this power in any county where the person whom he desires to examine may be found. (Sec. 2006.) If any person, after demand made by the assessor, neglects or refuses to give under oath the statement provided for, or to comply with the other lawful requirements of the assessor, that officer must note the refusal on the assessment-book opposite the name of the person and must make an estimate of the value of that person's property, and the value so fixed by the assessor must not be reduced by the board of county commissioners. (Sec. 2007.)

"The capital stock and franchises of corporations and persons, except as otherwise provided, must be listed and taxed in the county, town, or district where the, principal office or

place of business of such corporation or person is located; if there be no principal office or place of business in the state, then at the place in the state where any such corporation or person transacts business." (Sec. 2015.)

The assessor of Yellowstone county possessed the authority to require each owner of shares of stock in the Security Trust & Savings Bank within his county, to disclose his ownership thereof, and to assess the stock at its full cash value, except to the extent that that value then was represented in property then assessed to the bank. The presumption is that these owners will answer the assessor's inquiries truly. Doubtless the legislative assembly with propriety might provide additional machinery to aid the assessor in the matter of the assessment of the shares of stock owned by residents, as well as nonresidents, of the state.

It follows that it was not by authority of law that the taxing officers omitted the taxation of the shares of the Security bank. The law did not authorize the omission of these shares from taxation and their taxability in the instant case must be admitted.

Nor is there anything in the record to indicate that the same conditions apparent here do not apply to shares of stock in the other state banks mentioned in plaintiff's complaint.

It is clear, then, from an examination of the legislative [8, 9] enactments of this state, and from the decisions of this court construing the same, that the policy of this state has not been to evince an unfriendly discrimination against investments in national bank shares, but, on the contrary, the state by its laws has provided for the taxation of moneyed capital invested in state banks at the same rate as money invested in the shares of national banks. By direction of section 2000, Revised Codes of 1921, as a basis for the imposition of taxes a percentage of the true and full value of the property in Class six, section 1999, *supra,* is "forty per cent of its true and full value." The same percentage is applicable to shares of stock in state

banking corporations representing moneyed capital employed in the banking business.

Plaintiff's complaint is directed against the taxing system of the state with respect to the subjects under consideration rather than against the manner in which the taxing authorities have construed and executed the laws. In other words, the attack is upon the law rather than upon its administration. In this court plaintiff has pursued that theory both in oral and written argument. But a tax law cannot be held invalid for want of equality and uniformity because inequality or lack of uniformity results from the error or misconduct of the officers charged with the imposition or collection of the tax. (Cooley on Taxation, 4th ed., sec. 266; *Cummings* v. *Merchants' Nat. Bank of Toledo,* 101 U. S. 154, 25 L. Ed. 903.) Neither of plaintiff's objections is tenable.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

Case taken to supreme court of the United States by appellant on writ of error March 3, 1927.