BYRNE, Respondent, *v.* FULTON OIL CO., Appellant.

(No. 6,395.)

(Submitted February 20, 1929. Decided April 4, 1929. Resubmitted June 3, 1929. Decided June 22, 1929.)

[278 Pac. 514.]

330

*Mr. J. A. McDonough* and *Mr. Art. Jardine*, for Appellant, submitted briefs; *Mr. Jardine* argued the cause orally. *Mr. Donald Campbell*, of Counsel on Rehearing.

*Mr. Louis P. Donovan, Messrs. Belden & DeKalb* and *Mr. Merle C. Groene*, for Respondent, submitted briefs; *Mr. Donovan* and *Mr. H. Leonard DeKalb* argued the cause orally.

*Mr. L. A. Foot*, Attorney General, *Amicus Curiae*, submitted a brief.

*Mr. Sidney M. Logan, Amicus Curiae*, submitted a brief.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

On rehearing, the opinion herein promulgated April 4, 1929, is withdrawn, and the following opinion substituted therefor.

Plaintiff is the owner of certain land, situated in Toole county, which he leased, in September, 1920, for a period of ten years to Thor A. Thompson for the purpose of operating for and producing oil and gas. The lease contained this clause: "The lessee agrees to yield and pay to the lessor the one-eighth part or share of all the oil which he may obtain and to pay in cash the equal of one-eighth of the market value of all oil produced or saved from said land, which share shall be delivered to the lessor from the lessee's tanks at the wells, or for the lessor's credit to such pipe line company as may connect its lines with said tanks."

Subsequently the lease was assigned by Thompson to defendant. Thereafter plaintiff assigned three-fifths of the royalty

reserved to him and retained a five per cent royalty when this action was commenced. The record discloses that plaintiff was the owner of the five per cent royalty throughout the year 1926, except during the time between January 20 and May 16, that he received as royalty during the year 1926 the sum of $41,965.30, and that the royalty interest during the year yielded $56,727.67.

Between the first day of April, 1927, and the thirty-first day of May, 1927, defendant produced certain oil on the premises of which, under the terms of the lease and as admitted in the pleadings, and stipulated in open court at the trial, plaintiff was entitled to five per cent. This action was brought to recover the value of plaintiff's share of the oil which defendant failed and refused to pay.

The defendant in its answer alleged that it was retaining the sum demanded by plaintiff as and for taxes due from plaintiff and collectible from defendant under the provisions of Chapter 140, Laws of 1927; that it withheld sufficient to pay the estimated tax based upon the entire royalty of $56,727.67 yielded during the year 1926 upon the five per cent royalty interest owned by plaintiff when this action was commenced. Likewise, of the amount withheld by defendant, the sum of $352.18 was alleged to be retained for the tax estimated to accrue on the royalty oil produced between January 1, 1927, and May 31, 1927, and $64.95 was retained by defendant for the alleged reason that it had paid the same to the state of Montana for plaintiff as the two per cent oil producer's license tax.

Issue was joined by the reply, and the cause tried to the court sitting without a jury. Judgment was rendered for plaintiff, from which defendant appealed.

The lower court held that Chapter 140, Laws of 1927, was and is unconstitutional, and therefore furnished no justification for defendant's refusal to deliver to plaintiff his share of the oil in question. The correctness of this holding is the principal question presented on this appeal. In considering this question, we are mindful of the rule that an Act of the legislature will not be declared repugnant to the Consti-

tution unless its unconstitutionality is shown beyond a reasonable doubt. (*State ex rel. Wallace* v. *Callow,* 78 Mont. 308, 254 Pac. 187.)

When an Act is assailed as violative of the Constitution, the rule is that the court will give consideration to the question of whether it is possible to uphold, rather than condemn, the statute. (*Martien* v. *Porter,* 68 Mont. 450, 219 Pac. 817.) And the proper inquiry is not whether the Constitution in express terms grants the specific power to the legislature to enact the statute, but rather whether there is any constitutional provision expressly prohibiting the legislation in question. (*State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708; *Butte & Superior Min. Co.* v. *McIntyre,* 71 Mont. 254, 229 Pac. 730.)

Chapter 140, supra, and Chapter 139, Laws of 1927, are companion measures, approved the same day. Chapter 139 provides for the method of computing the net proceeds of mines assessable to the operator. By it the net proceeds assessable to the operator are ascertained by deducting from the gross product yielded from the mine, among other things, "all royalty paid or apportioned in cash or in kind by the person, corporation or association so engaged in mining." (Sec. 2.) The first section of Chapter 140 requires the operator of any mine to furnish a statement to the state board of equalization, on or before the thirty-first day of March of each year, setting forth, among other things, the names and addresses of "all persons, corporations or associations owning or claiming any royalty interest in the mineral product of such mine, or the proceeds derived from the sale thereof, together with the amount of such interest so owned or claimed on the first Monday of March of the year in which such statement is made and *the amount or amounts paid or yielded as royalty upon such royalty interest or interests during the preceding calendar year.*" (Italics ours.) Section 2 provides that the state board of equalization shall assess all royalty interests "at the full cash value thereof, which shall be the full cash value of the money or product yielded as royalty during the preceding calendar year, which royalty interests shall be taxed on the same basis as net proceeds of mines are taxed." The Act

makes the operator and the royalty holder jointly liable for the tax, and authorizes the operator to recover or withhold from any proceeds of such royalty, either in kind or money, coming into his hands, the amount of tax paid by him upon the royalty or royalty interest.

These statutes were enacted for the purpose of changing the scheme theretofore existing for taxing net proceeds of mines. Prior statutes contemplated but one assessment and that to the operator. (*Northern Pac. Ry. Co.* v. *Musselshell County*, 74 Mont. 81, 238 Pac. 872.)

It is unnecessary to determine in this action the exact nature of the property right referred to in Chapter 140 as a royalty interest. The statute does not attempt to tax the royalty interest, as such, but only the product yielded annually to the royalty interest. It is sufficient to say that the owner of a royalty interest is the owner of property, within the meaning of section 17, Article XII, of the Constitution, and in many cases the property is of great value. It is taxable unless expressly exempted. (*Montana Nat. Bank* v. *Yellowstone County*, 78 Mont. 62, 252 Pac. 876.) The royalty interest is simply the right to receive accruing royalties.

Section 3 of Article XII of the Constitution provides for the taxation of mines and mining interests and for the net proceeds of mines. This section of the Constitution was intended to provide a special method for taxing mines and mining interests, and provides that "the annual net proceeds of all mines and mining claims shall be taxed as provided by law." The legislature has power to prescribe how the net proceeds shall be ascertained. (*Anaconda Copper Min. Co.* v. *Junod*, 71 Mont. 132, 227 Pac. 1001.)

The framers of the Constitution, on account of the difficulty in arriving at a fair value of mining property, adopted as a substitute the method provided for by section 3, Article XII, supra, for taxing the "annual net proceeds." The net proceeds tax is simply a tax in lieu of, or a substitute for, the *ad valorem* tax on the value of mines or mining interests. (*Northern Pac. Ry. Co.* v. *Musselshell County*, 54 Mont. 96, 169 Pac. 53; *Salt Lake County* v. *Utah Copper Co.* (C. C. A.),

294 Fed. 199; *Beaver County* v. *South Utah Mines & Smelters* (C. C. A.), 17 Fed. (2d) 577; *South Utah Mines & Smelters* v. *Beaver County,* 262 U. S. 325, 67 L. Ed. 1004, 43 Sup. Ct. Rep. 577.)

It is well settled in this state that the mineral contents of a ▮ mine may not be taxed *in situ,* but taxation must be on the annual net proceeds. (*Hinz* v. *Musselshell County,* 82 Mont. 502, 267 Pac. 1113.)

If the statute is sufficiently broad, the royalty owner may be taxed on the net proceeds yielded to him. (*Tong* v. *Maher,* 45 Mont. 142, 122 Pac. 279.) And, as said by Mr. Justice Galen, speaking for the court in the case of *Homestake Exploration Corp.* v. *Schoregge,* 81 Mont. 604, 264 Pac. 388: "The net proceeds to him [the royalty owner] is the market value of the oil without deduction," and "the separate interests which different persons may own in the same property is property assessable and taxable to the true owner of the particular interest."

It is true that the lease involved in this action is the same as lease No. 1 referred to in the *Schoregge Case.* But the *Schoregge Case* was decided upon the laws existing prior to the enactment of Chapter 140, and in the opinion in that case there is no intimation that the legislature was without power to tax the owner of the royalty interest under lease No. 1, if it so desired. The effect of Chapter 140 is to place all royalty interests on the same footing regardless of the particular form of lease.

Moreover, under the pleadings in this case, and the stipulation entered into during the trial, plaintiff is the owner of five per cent of the royalty oil produced on the land in question, and the record discloses that during the year 1926 he actually received royalty amounting to $41,965.30. Hence, so far as this case is concerned, plaintiff was obligated to pay a tax based upon the sum of $41,965.30 of net proceeds under the laws in effect prior to the passage of Chapter 140, Laws of 1927. (*Homestake Exploration Corp.* v. *Schoregge,* supra.)

The question for determination here is whether its mode of collection is governed by Chapter 140 or by laws existing prior

to the passage of Chapter 140. No question is here presented that the product yielded to plaintiff was not a part of actual net proceeds. The question, whether the royalties received by a royalty holder, when they are not a part of actual net proceeds, are taxable, is not before us in this case. The question is presented whether Chapter 140 is operative as to royalties accrued and received during the calendar year 1926. Chapter 140 was approved on March 9, 1927, and became effective by its own terms on January 1, 1927.

Section 3, Revised Codes of 1921, provides: "No law contained in any of the Codes or other statutes of Montana is retroactive unless expressly so declared." A majority of the court are of the opinion that Chapter 140, since it is not expressly retroactive, and since section 3, supra, is a rule of construction binding upon the court, can have no operation as to royalties accruing prior to January 1, 1927. The writer of this opinion is of the view, concurred in by Mr. Justice Ford, that, since Chapter 140 became effective as of January 1, 1927, and since it expressly provides that the tax shall be computed from statements showing the product yielded "during the preceding calendar year," its provisions are expressly made retroactive to the extent required by section 3, supra, so as to embrace the proceeds yielded in 1926, and that the only effect of Chapter 140 on the royalty yielded in 1926, under the facts of this case, was to alter the mode of the collection of the tax accruing in the year 1927, and that the reasoning of the court in the case of *Nevada* v. *Manhattan Silver Mining Co.*, 4 Nev. 318–333, is applicable here, and the provisions of Chapter 140 should be held applicable to the product yielded and actually received by plaintiff during the year 1926. But, under the view of the majority of the court, Chapter 140 furnishes no justification for withholding from the royalty due to plaintiff in the year 1927 any taxes due on royalties received by plaintiff during the year 1926.

Nothing herein stated is to be understood as relieving the royalty owner from the obligation to pay taxes on royalties received by him during the year 1926.

Contention is made also that the statute contravenes the provisions of section 5, Article XVI of the Montana Constitution, which provides for the election of a treasurer in each county "who shall be collector of taxes." It is contended that Chapter 140 makes the operator the collector of the tax on the royalty interests. Chapter 140 does not attempt to deprive the treasurer of his authority to collect the taxes therein provided for. The collection of the tax shall be in the same manner as provided by Chapter 143, Laws of 1925, for the collection of taxes upon net proceeds of mines. The method of making the operator and the royalty holder jointly liable for the tax and authorizing the operator to withhold from the proceeds of the royalty interest the amount of any tax paid by him, was intended as a certain and expeditious method of collecting taxes on such property, and preventing the possibility of any of it escaping taxation. It was designed to authorize the collection of the tax at the source of the product, in order to avoid the necessity of seeking out each royalty holder for the purpose of effecting collection. The scheme is analogous to that of collecting taxes on shares of stock in a national bank, by collecting the tax from the bank as the agent of the stockholders. This has been held legitimate by the supreme court of the United States in the case of *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 51 L. Ed. 901, 27 Sup. Ct. Rep. 571, where it is said: "It, however, is not uncommon and is an entirely legitimate method of collecting taxes to require a corporation, as the agent of its shareholders, to pay in the first instance the taxes upon shares, as the property of their owners, and look to the shareholders for reimbursement." The statute is not in conflict with section 5, Article XVI, of our Constitution.

It is also contended that Chapter 140 is repugnant to section 11, Article III of our Constitution, as impairing the obligation of a contract. It is contended that, when the contract or lease in question was made, the law authorized but one assessment, and that to the operator, and that the effect of this Act is to impair the obligation of that contract.

"A contract between individuals cannot have the effect of depriving the state or any municipal subdivision of any power of taxation otherwise belonging to it." (12 C. J. 993; *State v. Clement Nat. Bank*, 84 Vt. 167, Ann. Cas. 1912D, 22, 78 Atl. 944.) And so it has been held that a law requiring the lessee of a railroad to deduct the taxes levied on the road from the rent agreed to be paid under the lease and to pay it to the state does not impair the obligation of prior leases. (*Vermont & Canada R. Co. v. Vermont Central R. Co.*, 63 Vt. 1, 10 L. R. A. 562, 21 Atl. 262.)

A complete answer to this contention is found in the case of *Lake Superior Con. Iron Mines v. Lord*, 271 U. S. 577, 70 L. Ed. 1093, 46 Sup. Ct. Rep. 627, where the court, speaking through Mr. Justice McReynolds, said: "Titles to all the lands and leases were obtained subject to the state's power to tax. If the statute now in controversy is within that power, it cannot impair the obligation of appellant's contracts; if beyond, it is, of course, invalid."

The supreme court of Washington, in the case of *Newman v. Commercial Waterway District*, 125 Wash. 577, 217 Pac. 9, stated the applicable rule as follows: "The taxpayer has no vested right in the existing mode of collecting taxes. There is no contract between him and the state that the latter will not vary such mode, and so long as no fundamental right to the taxpayer is invaded he cannot complain of a variation in the mode."

Furthermore, as above pointed out, under the pleadings in this case, plaintiff was liable to a tax on the proceeds of $41,965.30, yielded to him in 1926 under the law existing prior to the passage of Chapter 140, and hence no contract obligation affecting him has been impaired by that chapter.

It is contended that Chapter 140 is unconstitutional because it does not give the royalty owner the right to be heard in the proceedings resulting in the assessment. The record discloses that there is no dispute as to the amount of royalty oil due to plaintiff. No question is presented regarding the amount of the assessment. It was expressly admitted that the regularity

or legality of the assessment was not challenged, except on the ground that Chapter 140 was unconstitutional. The amount of the tax and its equalization were also admitted to be regular and legal, if the statute is valid. A person who is not prejudicially affected by the operation of a statute will not be heard to question its validity. (*Holt* v. *Custer County*, 75 Mont. 328, 243 Pac. 811; *State ex rel. Brooks* v. *Cook*, 84 Mont. 478, 276 Pac. 958.) On the other hand, under the statute here involved, a royalty holder has a right to be heard by the courts on the question of the constitutionality of the statute or to defend against a fraudulent assessment. (*State* v. *Silver Bow Refining Co.*, 83 Mont. 380, 272 Pac. 684.)

Contention is made that the Act is discriminatory. With this we do not agree. The Act applies to all royalty interests in mining property.

The court was in error in holding that Chapter 140 is unconstitutional upon any of the grounds contended for.

It remains to determine whether Chapter 140 is any justification for the action of defendant in retaining the royalty oil here involved. It is contended by plaintiff that its provisions authorize the withholding of either oil or money coming into the hands of the operator, sufficient to reimburse the operator for taxes already paid by the operator upon the royalty, and that its provisions do not authorize the withholding of either oil or money before the tax is paid.

The statute provides: "Provided, however, that such operator may recover or withhold, from any proceeds of such royalty or royalty interest, either in kind or money, coming into his hands, the amount of any tax paid by him upon such royalty or royalty interest." (Chap. 140, sec. 2, Laws of 1927.)

We think that, in order to carry out the evident purpose of the statute, the operator may withhold proceeds of royalty sufficient to pay the taxes due from the royalty owner before the actual payment of the tax. The phrase "withhold, from any proceeds of such royalty," as used in the statute, we think

indicates an intent on the part of the legislature to authorize the operator of a mine to retain or withhold a sufficient sum from all royalties delivered to royalty owners at the time of delivery to discharge the taxes reasonably expected to accrue on such royalties. In this case it appears that the estimated tax was based upon the rate of the tax levy for the preceding year. The majority of the court are of opinion that the withholding by the defendant of the proceeds of the royalty here involved to discharge the taxes accruing under Chapter 140 was authorized as to the tax to accrue on the proceeds yielded in the year 1927, and no more.

After the exact amount of the tax is ascertained for any year, an adjustment should be made between the operator and the royalty owner in accordance therewith.

The lower court in this case found that the two per cent oil producer's license tax provided for under section 2397 and section 2398 et seq., Revised Codes of 1921, as amended by Chapter 67 of the Laws of 1923, may not be withheld by the operator. With this we agree. The royalty owner is not subject to this tax. (*Norum* v. *Ohio Oil Co.*, 83 Mont. 353, 272 Pac. 534.)

The cause is remanded, with directions to modify the judgment in accordance with the views herein stated, and, as thus modified, it is affirmed. It is ordered that appellant recover its costs on appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.