CATHERINE KELLEHER, Appellant, *vs.* CHARLIE FONG.

Penobscot.    Opinion April 3, 1911.

*Landlord and Tenant.   Lease.   Execution.   Evidence.   Option to Renew.*
*Renewal.*

A landlord is presumed to have understood a lease signed by her, in the absence of fraud or deception practiced upon her.

Evidence *held* to show that a landlord signed a lease, and that it was previously read to her.

A lease to "Eng Fong and his brother," signed by "Charlie Fong" and "Charley Sam," *held* sufficient as a lease to Charlie Fong, on a showing of his identity as Eng Fong.

A lease until a specified time at a fixed rental, with a higher rental after that time, giving occupation as long as the lessee "may want it," gives the right to renew indefinitely.

By continuing in possession on lapse of a particular term, and paying stipulated rent, a tenant sufficiently elected to avail himself of an option to renew.

On report.    Judgment for defendant.

Forcible entry and detainer brought by the plaintiff in the Bangor Municipal Court.   Plea, the general issue.   Judgment for the defendant was rendered in that court and the plaintiff appealed to the Supreme Judicial Court.   At the conclusion of the evidence in the appellate court, the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Matthew Laughlin*, for plaintiff.

*Taber D. Bailey*, for defendant.

SITTING :    EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

WHITEHOUSE, J.    This is a process of forcible entry and detainer brought by the plaintiff January 14, 1910, as owner of a certain building on Exchange Street in Bangor, against the defendant

Charlie Fong, who had been in actual occupation of the premises for more than seven years prior to that date. It was not in controversy that the plaintiff had title to the property in fee simple but it is contended in her behalf that the defendant's only estate in the premises was that of a tenant at will and that his tenancy was terminated on the 9th day of January, 1910, by notice in writing given to him thirty days before that date.

It is admitted that judgment was rendered for the defendant in the lower court and the case comes to this court on the plaintiff's appeal. It is admitted that the defendant received from the plaintiff a written notice to quit and deliver up the premises to her on the 9th day of January, 1910, and that this notice was sufficient in form to terminate a tenancy at will. But the defendant denies that his occupation was that of a tenant at will at the time he received the notice to quit. He contends that since the 22nd day of October, 1903, he had been occupying under a written lease or agreement which gave him the right "to have the use and occupation of said store as long as he (they) may want it." This written agreement was introduced by the plaintiff and is as follows :

"This agreement made by and between Catherine Kelleher of Bangor, Penobscot county, Maine, and Eng Fong and his brother of said Bangor, Penobscot County, Maine, hereby agree that Eng Fong and his brother are to have the use and occupation of store at 123 Exchange Street, for twenty ($20) per month during the winter of 1903 and until the beginning of spring, 1904, and after that period are to pay twenty-five ($25) dollars per month for use and occupation of said store ; and also agree that they are to have the use and occupation of said store as long as they may want it.

Signed this 22nd day of October, 1903.

Witness,                               CATHERINE KELLEHER.
MRS. EDITH FREESE.            CHARLIE FONG,
                                          CHARLEY SAM.            "

The defendant accordingly claims that he was occupying as a lessee under a written lease with an option on his part to hold a life estate.

Against this document thus relied upon by the defendant as the foundation for his rights, the plaintiff claims that she is entitled to prevail upon four grounds.    She claims,

First, That she did not sign the instrument.

Second, She did not read the document and that although she supposed at the time that the whole of it was read to her by Mrs. Freese, that in fact the last clause stating that the other parties to the instrument should have the use and occupation of the store as long as they might want it, was never read to her and she understood she was signing a simple agreement to accept $25 a month for the rent.

Third.    That on the face of the paper there appears to be an uncertainty as to the lessees which is not removed by any evidence in the case ; and

Fourth, that in any event the instrument would not have the legal effect to give the defendant a life estate at his option as claimed by him.

The plaintiff testifies that she did not sign this typewritten document introduced in evidence containing the clause in question, but admits that she did sign a paper presented to her by Mrs. Freese. A careful perusal of the plaintiff's testimony however shows it to be evasive, contradictory and uncertain ; and in view of her statement that she had since been offered $50 a month for the store, her testimony must be accepted with great caution and qualification. On the other hand, the testimony of Mrs. Freese who attested the document, is that of an entirely disinterested witness.    She had been requested by the defendant as his former Sabbath School teacher to get the plaintiff to sign a typewritten paper to the effect that he and his brother should have the use of the place for twenty dollars a month and that she would not let any other Chinamen have the store.    The plaintiff was unwilling to sign that paper claiming that she ought to have more rent in the spring if she agreed not to let any other Chinamen have it.    Thereupon the plaintiff made a counter proposition to let the defendants have the store until spring for twenty dollars a month and thereafter for twenty-five dollars a month ; and Mrs. Freese states that she understood from the

conversation that the plaintiff was willing that the defendant should have the place as long as he wanted it at that rate. Mrs. Freese accordingly went to a lawyer's office, had the document in question typewritten by a stenographer and in the evening presented it to the plaintiff and read it to her, and Mrs. Kelleher made no objection and signed her name on it with a lead pencil, but at the suggestion of Mrs. Freese signed it with pen and ink. She then took the instrument to the defendant and his brother and they signed their names to it and she subscribed her name as a witness. She gives a clear and unbiased account of the transaction and appears to have had no motive whatever to prevaricate. Her testimony is corroborated by an examination of the original document which shows two signatures of the plaintiff written in ink, one in the first line of the body of the instrument under which lead pencil lines are plainly discernible, and the other at the bottom of the instrument, above and beyond which are traces of pencil marks.

But it is unnecessary to give further details of the testimony. It is sufficient to say that it is satisfactorily shown by all of the testimony considered in connection with the plaintiff's conduct in allowing the document to remain unchallenged for seven years and with the probabilities disclosed by the history of the transaction that the whole document was read to the plaintiff and that she signed her name to it. There is an entire absence of any evidence tending to show that Mrs. Freese practiced any fraud or deception upon the plaintiff with reference to the contents of the paper and she expressly states that it has not been changed in any respect since it was signed by the plaintiff. It is fairly to be inferred from all the testimony that the plaintiff understood the terms of the document when it was read to her by Mrs. Freese. Furthermore in the absence of any fraud or deception practiced upon her, she is presumed to understand the document which she signed. *Insurance Co.* v. *Hodgkins*, 66 Maine, 109 ; *Mattocks* v. *Young*, 66 Maine, 463 ; *Rogers* v. *Steamboat Co.*, 86 Maine, 261 ; *Wood* v. *Accident Assoc.*, 174 Mass. 217.

III. Nor is there any practical uncertainty in relation to the lessees or parties to this agreement. It is true the lessees named in

the body of the instrument are "Eng Fong and his brother," and that the signatures appended to it, under the name of the plaintiff, are "Charlie Fong and Charley Sam." It is unnecessary to attempt any solution of the mysteries involved in the peculiar association of English Christian names and Chinese patronymics by which many Chinamen are familiarly known in America. "Charley Sam" who appears to have signed as the brother of Charlie Fong, is not a party to this proceeding, and his rights are not in question here. And the party mentioned in the lease as "Eng Fong" is satisfactorily shown by the testimony, considered in relation to the circumstances, to have been the same party who signed his name to the lease as "Charlie Fong" and the identical person who was then occupying the plaintiff's store in question, and who had for seven years been recognized by the plaintiff as her tenant in that building. It does not appear that "Charley Sam" or any other person known as the defendant's brother, was then occupying, or has ever in fact occupied the plaintiff's store in conjunction with the defendant.

IV. Finally it is contended in behalf of the plaintiff that in any event the instrument in question did not have the legal operation and effect claimed for it by the defendant. It is insisted that at the expiration of the term of five months definitely fixed in the lease, viz. from the date of execution October 22, 1903, "until the beginning of spring," the defendant became simply a tenant at will, and not a tenant under a written lease with an option on his part to hold a life estate as claimed by him.

But the settled law of this State is against this contention of the plaintiff upon this branch of the case. In *Sweetser* v. *McKenney*, 65 Maine, 225, the facts are strikingly analogous to those in the case at bar. There the plaintiffs "agree to lease" the premises to the defendant "for five years and as much longer as he desires at the rate of $50 per year." At the expiration of eleven years from the date of the lease the plaintiffs, after due notice to quit, commenced a process of forcible entry and detainer against the defendant to recover possession of the premises, claiming that the instrument relied upon by him could not be operative as a lease for more than five years, and that it was "void for any longer period

because of its uncertainty and for want of notice from the defendant to the plaintiffs of his election to renew the lease for any further fixed time." But it was held by the court that the plaintiffs were estopped by their agreement from maintaining forcible entry and detainer to oust the defendant from the possession which they gave him, so long as he lived up to that agreement and desired to remain ; that effect must be given to the written agreement of the parties according to its "tenor and intent ;" that the stipulation that he was to have the premises "as much longer as he desires" was part of the consideration for which he took a lease and paid the $50 annual rent for five years, and that the plaintiffs were precluded by the terms of the lease from asserting that "the plaintiff unlawfully refuses to quit the premises, for they have received during the five years of the original term a certain sum annually which the defendant paid in part in consideration of their written promise that he might occupy the premises not only during those five years, but as much longer as he desired, paying the same rent." In support of this conclusion the court cited *Horner* v. *Leeds*, 1 Dutchie, 106 ; *Hurd* v. *Cushing*, 7 Pick. 169, and *Cook* v. *Bisbee*, 18 Pick. 527. It is further said in the opinion : "And in *Effinger* v. *Lewis*, 32 Penn. 367, the court recognizes the principle that parties may contract for an estate in land by a lease determinable only at the will of the lessee. In the cases which we have quoted the lease seems to have been under seal ; but under our statutes (now ch. 75, sect. 13) a seal does not seem to be essential to their validity as between the parties to them, provided they are in writing and signed by the maker or his attorney." We are not called upon to determine here what might be necessary to make one effectual against any person except the lessor, his heirs, devisees and persons having actual notice thereof." Judgment was accordingly ordered for the defendant.

In *Holley* v. *Young*, 66 Maine, 520, the plaintiffs leased the premises to the defendant for one year at a rental of $75 a year and then added the following : "We further agree to lease to said Young said premises at the price and conditions named as long as he wishes to occupy them." The tenant remained after the expira-

tion of the year, and the court held that his so remaining was an election to continue the tenancy. "The question, whether a written instrument is a lease or only an agreement for a lease, said the court, quoting from *Kabley* v. *Gas Light Co.*, 102 Mass. 392, "depends on the intentions of the parties to be collected from the whole instrument." *Bacon* v. *Bowdoin*, 22 Pick. 401. The form of expression " 'We agree to rent or lease' is far from being decisive on this question, and does not necessarily import that a lease is to be given at a future day." So in *Kramer* v. *Cook*, 7 Gray, 550, the agreement was "to hold for the term of three years, and at the election of the defendant for the further term of two years, and the court said : "The provision in the lease is not a mere covenant of the plaintiff for renewal ; no formal renewal was contemplated by the parties. The agreement itself is, as to the additional term, a lease de futuro.   .   .   .   all that is necessary to its validity is the fact of election.

In the recent case of *Briggs* v. *Chase*, 105 Maine, 317, the defendant was "to hold for the term of one year with the privilege of renewing on the same rental for any term not exceeding ten years," and after a critical examination of the authorities and full consideration of the question of the intention of the parties as disclosed by the terms of the lease interpreted in the light of all the facts and circumstances, it was held that it was the intent and purpose of the lease to make a demise in presenti to take effect in futuro at the option of the defendant, and that no written notice was necessary on the part of the defendant to establish his election to continue the tenancy under the lease. It will be noted, however, that the precise question now before the court was not involved in the last named case of *Briggs* v. *Chase*.

But it is contended by the learned counsel for the plaintiff that the great weight of authority in other jurisdictions is opposed to the doctrines laid down by the Maine court in the cases above quoted. It has been seen, however, that the decisions of this court in those cases were not influenced by the medievalism of the law or controlled by any arbitrary legal dogmas. It was obviously not the purpose of the court to establish any inflexible rules of law but

simply to reach the conclusion that would effectuate the intention of the parties to the several written agreements there under consideration, without violating any established principles of law or considerations of public policy.   And this court is still of opinion that a doctrine which enables the court to give effect to the intention of the parties as shown by the language of the written agreement, the circumstances attending it and the object to be accomplished by it, will be found more consonant with reason and justice than one which compels the court to defeat that intention.

In the case at bar the plaintiff agreed in writing to give the defendant the use and occupation of the premises for $20 a month "during the winter of 1903 and until the beginning of spring 1904," and after that period he was to pay $25 a month and have the store "as long as he may want it."   The language of this agreement is simple and direct and easily understood.   The plaintiff could not have failed to understand it in fact, as she was presumed to in law. It is immaterial whether under the practical construction placed upon the lease by the parties the "beginning of spring" was understood to be the first day of March or the vernal equinox on the 21st of March.   It appears that the defendant has continued to occupy the premises since March, 1904, to the present time, and it is not in controversy that rent at $25 a month has been paid from some date in the spring of 1904 to the satisfaction of both parties.

The language of the last clause stipulating that the defendant may have the store as long as he wants it at $25 a month, reasonably admits of but one meaning and needs no interpretation.   In consideration of the preceding term expiring "at the beginning of Spring" and the substantial increase of five dollars a month thereafter, the defendant was to have the right and privilege, at his option, to have the store as long as he wanted it.   The instrument was complete in itself and comprised the stipulations for both terms. No formal renewal by a second written instrument was contemplated by the parties.   The agreement operates as a lease in futuro of the additional term.   Only the lapse of the preceding term and the election of the defendant were required to render it a lease in presenti.   The defendant's continued occupation of the store at the

expiration of the first term and for six years thereafter and the payment of the increased monthly rent, affords ample evidence of his election.    It would be a contradictory interpretation, destructive of the plain and ordinary meaning of words and of the obvious intention of the parties, to hold that the defendant had the option to continue his occupation of the store as long as he wished after the expiration of the first term, and at the same time that the plaintiff had the option to prohibit him from so doing.

It is accordingly the opinion of the court that the certificate must be,

*Judgment for the defendant.*