NORTHERN PACIFIC RAILWAY CO., Appellant, *v.*
MUSSELSHELL COUNTY, Respondent.

(No. 7,237.)

(Submitted March 31, 1934. Decided April 18, 1934.)

[32 Pac. (2d) 1.]

*Messrs. Gunn, Rasch, Hall & Gunn,* for Appellant, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, *Mr. Jeremiah J. Lynch,* First Assistant Attorney General, and *Mr. F. V. Watts,* County Attorney of Musselshell County, for Respondent, submitted a brief; *Mr. Lynch* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to recover taxes paid under protest. Defendant filed a general demurrer to the complaint, which, after hearing, was by the court sustained. Time was allowed within which to file an amended complaint, and, none being filed, after expiration of the time for amendment, a judgment of dismissal was entered. The appeal is from the judgment.

The only question involved on this appeal is the sufficiency of the facts in the complaint to state a cause of action. Two separate causes of action are stated in the complaint. Each relates to separate taxes; both are in identical form and concern the imposition of a tax on like property under identical circumstances. It is therefore necessary to notice only the first cause of action as the determination of its sufficiency effectively disposes of the same question with reference to the second cause of action.

The allegations of the first cause of action are as follows: That the parties plaintiff and defendant are corporations; that long prior to January, 1931, plaintiff was the owner of coal lands in Musselshell county; that prior to that date plaintiff

had by contract made at St. Paul, Minnesota, granted to the Roundup Coal Mining Company, a Nebraska corporation, "the right and privilege of mining and extracting coal from said lands for a rental and royalty measured by the quantity of coal mined and produced from said lands," and also for a minimum rental, all payable in cash at St. Paul; that the coal company produced coal from these lands in the year 1931, and paid to plaintiff at St. Paul, as rental and as royalty on account of the coal produced and extracted during that year, the sum of $6,820.53; and that the coal company reported the payment of this sum to the state board of equalization, which, after allowing for depletion, proceeded to assess plaintiff thereon for the sum of $4,105.96, and calculated taxes on this assessment for the sum of $362.67, of which plaintiff on November 28, 1932, paid one-half under written protest. It is further alleged in the complaint "that under and by virtue of said contract, this plaintiff had no right to, or interest whatever in, the coal so mined and extracted during the year 1931, or the net proceeds thereof, and never received, and is not entitled to receive, any part of said coal or net proceeds."

By section 1 of Chapter 140, Laws 1927, corporations and other persons engaged in mining coal, and many other forms of mineral there enumerated but not here in question, are required to report to the state board of equalization the names and addresses of "all persons, corporations or associations owning or claiming any royalty interest in the mineral product of such mine, or the proceeds derived from the sale thereof, * * * and the amount or amounts paid or yielded as royalty upon such royalty interest or interests."

Under the provisions of section 2 of Chapter 133, Laws of 1931, being an amendment to Chapter 140, supra, it is provided that the state board of equalization shall make deductions from the amounts reported by the operating company for depletion, and "shall proceed to the assessment of all such royalty interests and shall assess the same at the full cash value thereof, * * * which royalty interests and the money or product paid or yielded thereto, shall be deemed a part of the net

proceeds of a mine or mines and shall be taxed on the same basis as net proceeds of mines are taxed as provided by Section 1999 of the Revised Codes of Montana of 1921.''

The defendant contends that the allegations of paragraph 6 of the complaint, wherein it is stated that the plaintiff never received any net proceeds from the coal mining operation, are conclusions of law, and that they are therefore ineffectual for the purpose of the statement of a cause of action. The basis of the plaintiff's contention is that it has been taxed upon the sum of money received as being part and parcel of the net proceeds of mines. Section 3 of Article XII of our Constitution provides for the taxing of ''the annual net proceeds of all mines and mining claims * * * as provided by law.'' The complaint does not disclose whether there were any net proceeds resulting from the mining operation on the lands and premises in the year 1931.

If the allegations of paragraph 6 are in fact conclusions of law, as distinguished from an ultimate fact or a conclusion of fact, then the complaint is insufficient. In this connection a brief review of our previous decisions concerning the taxing, as net proceeds, of royalty interests received from mining operations, is desirable. The case of *Tong* v. *Maher*, 45 Mont. 142, 122 Pac. 279, decided at the time the statutes of the state provided that the tax on net proceeds was a lien upon the mine, mines or mining claim from which the ores or minerals were extracted, held that the net proceeds tax was properly assessed against the owner of the mine, even though he was not engaged in the mining operations on his property, if he received a part of the net proceeds from the mine.

Later it was held by this court, in the case of *Northern Pacific Ry. Co.* v. *Musselshell County*, 74 Mont. 81, 238 Pac. 872, after certain changes had occurred in the statutory law therein noted and discussed, that the lessee, and not the owner of the mine, was the only person against whom the net proceeds tax could be levied, and that a royalty or a rental there paid to the plaintiff could not be assessed to it on the basis of net proceeds of mines.

In the case of *Homestake Exploration Corp.* v. *Schoregge,* 81 Mont. 604, 264 Pac. 388, the question involved was whether or not the net proceeds tax was properly assessable against the lessee under an oil and gas lease for the proceeds from the oil-well paid as royalty to the land owner. It was there held, under a lease which provided that the lessee agreed to yield and pay to the lessor a certain portion of the oil recovered, that the royalty paid to the owner, although a part of the net proceeds of the well, was properly taxable against the operator. This opinion was based on *Northern Pacific Ry. Co.* v. *Musselshell County,* supra, the court holding as to certain other leases involved in the same action under which the land owner at all times reserved a certain interest in the oil under the leased premises, and the lessee agreed to deliver to the credit of the royalty owner the amount of oil so reserved, that the amount of oil delivered as royalty was not properly taxable against the operator or lessee, but the amounts received by the royalty owner were properly taxable against the royalty owner.

In the case of *Byrne* v. *Fulton Oil Co.,* 85 Mont. 329, 278 Pac. 514, this court had under consideration an oil lease identical in its provisions in relation to the payment of royalty with those involved in the first lease in the *Schoregge Case,* supra. The question involved there was whether the holder of the royalty might be taxed for the receipt therefrom as for net proceeds of mines. It appeared from the pleadings in the case, and it was not disputed, that the sums of money which the royalty owner received were in fact a part of the net proceeds; and it was held that, in view of the provisions of Chapter 140, Laws of 1927, such net proceeds as were received by the royalty owner were properly taxable to him.

Where a conclusion describes a legal status or condition, or ██ a legal offense, it would ordinarily be termed a conclusion of law; where, on the other hand, the conclusion describes a condition or status not represented or designated by some definite legal term or rule, it will ordinarily be a conclusion of fact. (*Reed* v. *Woodmen of the World,* 94 Mont. 374, 22

Pac. (2d) 819.) It is said: "The test as to whether the pleader has stated ultimate facts or conclusions of law is: Does the complaint state facts from which the court can determine that he [the plaintiff] is entitled to relief, or merely declare that the pleader is entitled to the relief demanded?" (*Johnson* v. *Johnson*, 92 Mont. 512, 15 Pac. (2d) 842, 844.)

The statement that plaintiff received no net proceeds does not state facts from which the court could conclude that it was entitled to recover, but merely states that plaintiff is entitled to recover. Furthermore, what are net proceeds is, under our law, a definite legal status or condition.

Where a seasonable attack is made upon the complaint, as here, for want of substantive allegations, the court should indulge as against the pleader the presumption that he has stated his cause of action as strongly as he can. (*State ex rel. Toomey* v. *State Board of Examiners*, 74 Mont. 1, 238 Pac. 316; *Conrad National Bank* v. *Great Northern Ry. Co.*, 24 Mont. 178, 61 Pac. 1.) Therefore, presumably plaintiff could not allege that there were in fact no net proceeds from the mining operations, and, if the complaint had alleged the receipt of net proceeds by the coal company after the payments made to the plaintiff, then clearly, under the authority of *Byrne* v. *Fulton Oil Co.*, supra, the sum so paid would have been taxable to plaintiff. Clearly, the allegation that plaintiff had received no net proceeds was in this case a conclusion of law. There is nothing to disclose on the face of the complaint that the tax, or any part of it, is unlawful. Even though we treat all the facts as distinguished from the conclusions of law in the complaint as true, until it is disclosed that the tax is unlawful, the complaint fails to state a cause of action. (*Butte Electric R. Co.* v. *McIntyre*, 71 Mont. 21, 227 Pac. 61.) The demurrer was properly sustained.

The judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews and Stewart concur.

MR. JUSTICE ANGSTMAN: I agree with the result reached in the foregoing opinion, but not with the reasoning by which that result was reached.

The complaint, I think, is sufficient to tender the question which plaintiff sought to present. That question is whether plaintiff is liable for a net proceeds tax on the proceeds yielded to it as royalty on its royalty interest in a mine, when such royalty is no part of the net proceeds from the operation of the mine by the operator. Under section 3, Article XII, of our Constitution, "the annual net proceeds of all mines and mining claims shall be taxed as provided by law." Chapter 133, Laws of 1931, provides that the product yielded to a royalty interest "shall be deemed a part of the net proceeds of a mine or mines and shall be taxed on the same basis as net proceeds of mines are taxed." It is plain that under this statute it matters not whether the mine is operated at a profit or at a loss by the operator, so far as the royalty holder is concerned. He must pay on the royalty yielded to him whether the operator of the mine operated it at a profit or loss.

I do not agree that net proceeds is a definite legal status or condition, as stated in the majority opinion. The legislature has discretion in determining what deductions are allowable from the gross proceeds in arriving at the net. (*Anaconda Copper Min. Co.* v. *Junod*, 71 Mont. 132, 227 Pac. 1001.) As to a royalty owner, who has no expense, the product yielded to him is net proceeds to him, and the legislature properly so provided. The question has been definitely settled in this jurisdiction by the case of *Homestake Exploration Corp.* v. *Schoregge*, 81 Mont. 604, 264 Pac. 388, 393. In that case Mr. Justice Galen, speaking for the court, correctly said: "Here the royalty, as a separate species of personal property, is taxable to its true owner. For example, the operator produces from the well 80 barrels of oil, of which the landowner is entitled by reservation to one-eighth, or 10 barrels. The operator has produced 70 barrels for himself, upon which he is taxable on the basis of net proceeds, while the landowner has his pro-

portion of the oil set aside to him without operation cost, and he is taxable therefor as 'net proceeds' on the basis of its cash value without deduction, for it is delivered to him without expense. The net proceeds to him is the market value of the oil without deduction. The separate interests which different persons may own in the same property is properly assessable and taxable to the true owner of the particular interest.''

The complaint, I think, is sufficient to present the question of the meaning, effect, and validity of Chapter 133, Laws of 1931. On the merits, as above pointed out, plaintiff is not entitled to prevail, because it is liable for the tax, regardless of whether the proceeds yielded to it as royalty were a part of the net proceeds viewed from the standpoint of the operator. Hence the demurrer to the complaint was properly sustained.